## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CITIZENS FOR RESPONSIBILITY AND**
**ETHICS IN WASHINGTON**
455 Massachusetts Ave., N.W.,
Washington, D.C. 20001,

**PUBLIC EMPLOYEES FOR**
**ENVIRONMENTAL RESPONSIBILITY**
962 Wayne Ave., Suite 610
Silver Spring, MD  20910

Plaintiffs,

v.

**SCOTT PRUITT, ADMINISTRATOR,**
**U.S. ENVIRONMENTAL PROTECTION**
**AGENCY (in his official capacity)**
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460,

**U.S. ENVIRONMENTAL PROTECTION**
**AGENCY**
1200 Pennsylvania Avenue, N.W.
Washington, D.C. 20460,

**DAVID S. FERRIERO, ARCHIVIST**
**OF THE UNITED STATES (in his official**
**capacity)**
8601 Adelphi Road
College Park, MD 20740-6001

**NATIONAL ARCHIVES AND RECORDS**
**ADMINISTRATION**
8601 Adelphi Road
College Park, Maryland 20740-6001

Defendants.

Civil Action No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1.     This is an action under the Administrative Procedure Act ("APA"), 5 U.S.C.

§§ 701, *et seq*., and the Federal Records Act ("FRA"), 44 U.S.C. §§ 2101, *et seq*. and 44 U.S.C.

§§ 3301, *et seq*. Plaintiffs Citizens for Responsibility and Ethics in Washington ("CREW") and

Public Employees for Environmental Responsibility ("PEER") challenge as contrary to law the

failure of Environmental Protection Agency ("EPA") Administrator Scott Pruitt and the EPA to

adequately document EPA policies, decisions, and essential transactions as the FRA requires,

and their failure to maintain a program that adequately documents EPA decisions and activities.

Plaintiff also challenges the failure of the Archivist of the United States David S. Ferriero

("Archivist") and the National Archives and Records Administration ("NARA") to inform the

EPA and Administrator Pruitt in writing of these violations and make recommendations for their

correction, and to submit a written report of the matter to the president and Congress when

satisfactory corrective measures have not demonstrably commenced within a reasonable time.

2.     This case seeks declaratory relief that Administrator Pruitt, the EPA, the

Archivist, and NARA are not complying with their obligations under the FRA. Plaintiffs also

seek injunctive relief requiring defendants to comply with those obligations.

## JURISDICTION AND VENUE

3.     This Court has personal and subject-matter jurisdiction over this action pursuant

to 28 U.S.C. § 1331 (action arising under the laws of the United States); 5 U.S.C. §§ 701, *et seq*.

(the APA); 44 U.S.C. §§ 2101, *et seq*. and 44 U.S.C. §§ 3301, *et seq*. (the FRA); and 28 U.S.C.

§§ 2201 and 2202 (the Declaratory Judgment Act).

4.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(e).

## PARTIES

5.      Plaintiff CREW is a nonprofit, non-partisan corporation organized under section 501(c)(3) of the Internal Revenue Code. CREW is committed to protecting the right of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials. To advance its mission, CREW uses a combination of research, litigation, advocacy, and public education to disseminate information to the public about public officials and their actions. CREW researches and reviews agency records created and preserved pursuant to the FRA and made available to the public pursuant to executive branch agency obligations imposed by statutes like the Freedom of Information Act ("FOIA"). CREW disseminates information in a variety of ways, including posting records it has received FOIA requests on its website, www.citizensforethics.org, and by writing and publishing reports and blogposts.

6.      CREW has a significant interest in ensuring agency compliance with records responsibilities under the FRA. CREW's efforts to ensure such compliance stem, *inter alia*, from CREW's efforts to highlight industry influence over agency decisions and combat ethics violations when they occur. As an example, in October 2017, CREW sent a letter to the EPA OIG requesting that the Inspector General investigate whether Deputy Assistant Administrator Nancy Beck improperly participated in rulemaking from which she should have recused herself. Previously in 2012, CREW sent a letter to the EPA Office of the Inspector General ("OIG"), requesting that the Inspector General investigate whether then-EPA Administrator Lisa Jackson and other EPA employees used alias, private email accounts for official business, in violation of the FRA.

7.      The FOIA requests CREW has filed also reflect CREW's interest in the EPA's recordkeeping practices. Since January 2017, CREW has submitted 16 separate FOIA requests to

3

the EPA, virtually all of which remain outstanding. When the EPA fails to adequately document

its policies, decisions, and essential transactions, CREW is harmed because its FOIA requests

will yield fewer responsive documents.

8.     CREW expects to continue filing FOIA requests with the EPA and to have an

ongoing interest in the agency's compliance with executive branch ethics requirements and with

its recordkeeping responsibilities under the FRA.

9.     Plaintiff PEER is a nonprofit public interest organization organized under section

501(c)(3) of the Internal Revenue Code, incorporated in Washington, D.C., and headquartered in

Silver Spring, Maryland, with field offices in California, Colorado, Florida, Massachusetts, and

Tennessee. Among other public interest projects, PEER engages in advocacy, research,

education, and litigation to promote public understanding and debate concerning key and current

public policy issues. PEER focuses on the environment, including the regulation of threats to

human health, public land and natural resource management, public funding of environmental

and natural resource agencies, and ethics in government. PEER educates and informs the public

through news releases to the media, through its website, www.peer.org, and through publication

of the PEER newsletter.

10.     PEER has a significant interest in ensuring agency compliance with records

responsibilities under the FRA. PEER's efforts to ensure such compliance stem from the

organization's efforts to inform the administration, Congress, media, and the public about

substantive environmental issues of concern to PEER members. To effectuate these ends, PEER

monitors natural resource management agencies, like EPA, by serving as a "watch dog" for the

public interest and combats political manipulation of science.

11.     The FOIA requests PEER has filed also reflect PEER's interest in the EPA's recordkeeping practices. Since January 2017, PEER has filed four separate lawsuits against the EPA for its failure to promptly and adequately produce records in response to FOIA requests. When the EPA fails to adequately document its policies, decisions, and essential transactions, PEER is harmed because its FOIA requests will yield fewer responsive documents, government transparency is impaired, and information detailing agency decision making is made unavailable to the public.

12.     PEER expects to continue filing FOIA requests with the EPA and to have an ongoing interest in the agency's compliance with FOIA, the APA, and its recordkeeping responsibilities under the FRA.

13.     Defendant Scott Pruitt is Administrator of the EPA and is sued in his official capacity only. As EPA Administrator, Mr. Pruitt has an obligation under the FRA to adequately document agency decisions, including the formulation and execution of basic policies and decisions, all decisions and commitments reached orally, and all necessary agency actions the EPA takes. As EPA Administrator, Mr. Pruitt also has an obligation under the FRA to maintain a program that adequately documents agency decisions and activities.

14.     Defendant EPA is an agency within the meaning of 5 U.S.C. § 701. The EPA is responsible for implementing Administrator Pruitt's directives and policies, including those crafted pursuant to the obligations the FRA imposes on Administrator Pruitt and the EPA.

15.     Defendant David S. Ferriero is the Archivist of the United States and is sued in his official capacity only. As Archivist, Mr. Ferriero must provide "guidance and assistance to Federal agencies with respect to ensuring . . . adequate and proper documentation of the policies and transaction of the Federal Government[.]" 44 U.S.C. § 2904. The Archivist must also

prescribe regulations deemed "necessary to effectuate the functions of the Archivist." 44 U.S.C.
§ 2104. Upon a finding that an agency has violated or is violating the FRA, the Archivist must
inform the head of the agency in writing of the violation and make recommendations for its
correction. 44 U.S.C. § 2115(b). If the agency does not demonstrably commence satisfactory
corrective measures within a reasonable time, the Archivist must submit a written report of the
matter to the president and Congress.  *Id.*

16.     Defendant NARA is an independent establishment in the executive branch.  44
U.S.C. § 2102. NARA operates under the supervision and direction of the Archivist.  *Id.*

## STATUTORY AND REGULATORY FRAMEWORK

### *The Federal Records Act*

17.     The FRA is a collection of statutes that governs the creation, management, and
disposal of federal records. *See generally* 44 U.S.C. §§ 2101, *et seq.*; §§ 2901, *et seq.*; §§ 3101,
*et seq.*; and §§ 3301, *et seq.* Among other things, the FRA ensures the "[a]ccurate and complete
documentation of the policies and transactions of the Federal Government." 44 U.S.C. § 2902.

18.     Both the Archivist and the heads of the various executive departments and
agencies share responsibility to ensure that an accurate and complete record of their policies and
transactions is compiled. *See* 44 U.S.C. §§ 2901, *et seq.*, §§ 3101, *et seq.*

19.     The Archivist must "provide guidance and assistance to Federal agencies" and has
the responsibility "to promulgate standards, procedures, and guidelines with respect to records
management and the conduct of records management studies." 44 U.S.C. § 2904. The Archivist
has promulgated regulations governing the creation and maintenance of federal records pursuant
to this authority. *See* 36 C.F.R. § 1222.22, *et seq.*

20.    The head of each executive branch agency "shall make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency and designed to furnish the information necessary to protect the legal and financial rights of the Government and of persons directly affected by the agency's activities." 44 U.S.C. § 3101.

21.    Regulations promulgated by the Archivist describe in greater detail each of the FRA's demands:

> To meet their obligation for adequate and proper documentation, agencies must prescribe the creation and maintenance of records that:
>
> (a) Document the persons, places, things, or matters dealt with by the agency.
>
> (b) Facilitate action by agency officials and their successors in office.
>
> (c) Make possible a proper scrutiny by the Congress or other duly authorized agencies of the Government.
>
> (d) Protect the financial, legal, and other rights of the Government and of persons directly affected by the Government's actions.
>
> (e) Document the formulation and execution of basic policies and decisions and the taking of necessary actions, including all substantive decisions and commitments reached orally (person-to-person, by telecommunications, or in conference) or electronically.
>
> (f) Document important board, committee, or staff meetings.

36 C.F.R. § 1222.22.

22.    Under the FRA, the head of each agency also must "establish and maintain an active, continuing program for the economical and efficient management of the records of the agency." *Id.* at § 3102.

23.    Regulations promulgated by the Archivist detail these obligations. Each program an agency establishes to manage agency records "must develop recordkeeping requirements that identify . . . [t]he record series and systems that must be created and maintained to document

program policies, procedures, functions, activities, and transactions." 36 C.F.R. § 1222.26.

Further, each program "must develop recordkeeping requirements for records series and systems

that include" (among other things) "[p]olicies and procedures for maintaining the documentation

of phone calls, meetings, instant messages, and electronic mail exchanges that include

substantive information about agency policies and activities." 36 C.F.R. § 1222.28.

24.     The FRA requires the Archivist to take action to remediate FRA violations.

Specifically, "[w]hen the Archivist finds that a provision of any such chapter has been or is being

violated, the Archivist shall (1) inform in writing the head of the agency concerned of the

violation and make recommendations for its correction; and (2) unless satisfactory corrective

measures are demonstrably commenced within a reasonable time, submit a written report of the

matter to the President and the Congress." 44 U.S.C. § 2115.

*The Administrative Procedure Act*

25.     The APA provides that a "person suffering legal wrong because of agency action,

or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is

entitled to judicial review thereof." 5 U.S.C. § 702. Such relief is available unless other "statutes

preclude judicial review" or the action challenged is "committed to agency discretion by law." 5

U.S.C. § 701.

26.     The term agency action "includes the whole or a part of an agency rule, order,

license, sanction, relief, or the equivalent or denial thereof, *or failure to act*." 5 U.S.C. § 551

(emphasis supplied). *See also* 5 U.S.C. § 701 (cross referencing the definitions at § 551).

27.     A court reviewing a claim brought under 5 U.S.C. § 702 "shall decide all relevant

questions of law, interpret constitutional and statutory provisions, and determine the meaning or

applicability of the terms of an agency action." 5 U.S.C. § 706. The reviewing court shall

"compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" *Id.*

28.     The APA authorizes judicial review of properly pleaded claims that an agency has violated its non-discretionary obligations under the FRA, including the failure to "make . . . records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency" and the failure to maintain a program an active, continuing program for the economical and efficient management of the records of the agency. *Armstrong v. Bush*, 924 F.2d 282, 291-92 (D.C. Cir. 1991).

29.     The APA also authorizes judicial review of claims that an agency's recordkeeping policies and practices regarding the creation of records are arbitrary, capricious, and do not comply with the FRA. *Id.*

30.     The APA also authorizes judicial review of claims that the Archivist has failed his responsibilities to inform an agency head of FRA violations and make recommendations for their correction, and has failed to submit a written report of the matter to the president and Congress in the event that remedial action is not taken. *See Citizens for Responsibility & Ethics in Washington v. U.S. Dep't of Homeland Sec.*, 527 F. Supp. 2d 101, 111 (D.D.C. 2007) ("The APA also authorizes the Court to entertain a claim that the head of the DHS or the Archivist have breached their statutory obligations to take enforcement action[.]").

## FACTS GIVING RISE TO PLAINTIFF'S CLAIMS FOR RELIEF

*EPA Records Management Policy*

31.     The EPA's written records management policy "addresses all records made or received by EPA employees under federal law or in connection with the transaction of public business, and preserved or appropriate for preservation as evidence of EPA functions,

organization and activities or because of the value of the information they contain." EPA

Records Management Policy ("EPA Policy") ¶ 2, *available at* https://www.epa.gov/sites/

production/files/2015-03/documents/cio-2155.3.pdf.

32.     The EPA's records management policy "applies to all EPA headquarters,

regional, laboratory and other organizations." EPA Policy ¶ 2.

33.     The policy states, "[a]s a regulatory agency charged with protecting human health

and the environment, the EPA is committed to managing the Agency's records properly to

comply with legal requirements and to support the Agency's mission." EPA Policy ¶ 6.a. The

EPA policy prohibits EPA employees from creating or sending a federal record using a non-EPA

electronic messaging account unless the individual creating or sending the record either: (1)

copies their EPA email account at the time they initially create or transmit the record, or (2)

forwards a complete copy of the record to their EPA email account within 20 days of the

records' original creation or transmission. The policy further discourages the use of text

messaging on a mobile device for sending or receiving substantive (or non-transitory) agency

records. EPA Policy ¶ 6.b.

34.     Under the policy, the EPA Administrator bears responsibility for creating and

preserving records that adequately and properly document the organization, functions, policies,

decisions, procedures and essential transactions of the EPA. EPA Policy ¶ 8.a. The policy

imposes on all EPA employees, *inter alia*, the obligation to create and manage records that are

necessary to document the EPA's official activities and actions. EPA Policy ¶ 8.l.1. EPA

employees may destroy records only in accordance with approved records schedules. EPA Policy

¶ 8.l.2.

35.     The EPA's policy contains no provision implementing the requirement, at 36

C.F.R. § 1222.22, that records of "all substantive decisions and commitments reached orally

(person-to-person, by telecommunications, or in conference)" be created.

*Administrator Pruitt's Failure to Create a Record of Agency Business*

36.     Since assuming office, EPA Administrator Pruitt has operated in extensive

secrecy and avoided creating an adequate record of his and the EPA's actions.

37.     Before his confirmation as EPA Administrator, Mr. Pruitt served as the Oklahoma

attorney general and established himself in part by suing to block EPA actions under the

previous administration. The *New York Times* chronicled his close ties as attorney general to

industry groups wishing to oppose the EPA's agenda, and obtained records of this coordination

using state open records requests. Coral Davenport, Senate Confirms Scott Pruitt as E.P.A. Head,

New York Times, Feb. 17, 2017, *available at* https://www.nytimes.com/2017/

02/17/us/politics/scott-pruitt-environmental-protection-agency.html. *See also* Coral Davenport

and Eric Lipton, Scott Pruitt is Carrying Out His E.P.A. Agenda in Secret, Critics Say, *New York*

*Times*, Aug. 11, 2017, *available at* https://www.nytimes.com/2017/08/11/us/politics/scott-pruitt-

epa.html. The full extent of Mr. Pruitt's ties to these groups, however, was not revealed until four

days after his confirmation as EPA Administrator, when an Oklahoma state court ordered that

more than 7,500 pages of his emails be made public. https://www.exposedbycmd.org/Scott-

Pruitt-Missing-Emails.

38.     Perhaps in response to this compelled disclosure, at the EPA Administrator Pruitt

and other EPA political appointees reportedly have verbally instructed EPA staff not to create a

written record about major substantive matters, including significant proposed changes to a rule

regarding water quality in the United States. Davenport and Lipton, *New York Times*, Aug. 11, 2017.

39.     Administrator Pruitt reportedly also has prohibited staff from bringing cell phones into meetings and directed staff not to take notes to avoid the creation of any record of his questions and/or directions. *Id.*

40.     Further, Administrator Pruitt reportedly has used telephones other than his own to make important phone calls to avoid their appearing on his own call log. *Id.* Other reports state that Administrator Pruitt holds face-to-face meetings, prefers to deliver instructions verbally, and avoids using emails that create a record of his statements. Brady Dennis, EPA Spending Almost $25,000 to Install a Secure Phone Booth for Scott Pruitt, *Washington Post*, Sept. 26, 2017, *available at* https://www.washingtonpost.com/news/energy-environment/wp/2017/09/26/epa-spending-almost-25000-to-install-a-secure-phone-booth-for-scott-pruitt/?utm_term=.53f35b5d027b.

41.     A particularly glaring example of Administrator Pruitt's efforts to avoid the required creation of federal records concerns a rule promulgated by the previous administration, "Waters of the United States," that was designed to expand existing federal protections of large water bodies to include wetlands and small tributaries that are crucial to their health. The rule was accompanied by a cost-benefit analysis showing that the economic benefits from protecting those additional bodies of water might outweigh the economic cost to farmers, landowners, and real estate developers. In mid-June 2017, Administrator Pruitt's deputies gave agency economists verbal instructions to produce a new analysis of the rule that eliminated consideration of the economic benefits that the agency had previously identified. According to Elizabeth Southerland, a senior official in the agency's water office who spent 30 years at the EPA before

12

retiring in July 2017, and other experts in federal rulemaking, these kinds of analyses typically would be accompanied by enormous written records that include scientific, technology, and economic facts. Davenport and Lipton, *New York Times*, Aug. 11, 2017. Southerland described the repeal process under Administrator Pruitt as "political staff giving verbal directions to get the outcome they want, essentially overnight." *Id.*

42.     The failure of Administrator Pruitt and his staff, at his direction, to create records documenting their decisions and actions also has denied the public access to information pursuant to the Freedom of Information Act. For example, in July 2017, the Public Employees for Environmental Responsibility ("PEER") filed a FOIA request with the EPA for records related to the Superfund Task Force Administrator Pruitt commissioned to overhaul the Superfund program. https://www.peer.org/assets/docs/epa/12_20_17_PEER_Superfund _TF_FOIA_suit1.pdf.

43.     Among other things, PEER requested records about the members of the committee, the criteria for their selection, recorded minutes from Task Force meetings, and other documentation supporting the Task Force's decisions.

44.     After the EPA failed to respond, PEER filed suit. *PEER v. U.S. Environmental Protection Agency*, Civil No. 17-1780 (D.D.C.). Only then did the EPA admit that there were no selection criteria for Task Force members, no meeting minutes were kept, and no materials other than a memo establishing the Task Force were presented to the Task Force. Further, although the Task Force issued a set of 42 recommendations, the EPA stated there was no work product from the Task Force beyond the final recommendations.

45.     Administrator Pruitt has personally gone to extraordinary lengths to avoid creating federal records and maintain secrecy. At his direction, the EPA signed a $24,570

contract in the summer of 2017 for a "privacy booth" for the Administrator. The booth is a full-scale enclosure that prevents anyone outside of the booth from overhearing what anyone inside is saying. Dennis, *Washington Post*, Sept. 26, 2017.

46.     Administrator Pruitt has taken other costly and burdensome steps to maintain secrecy around his actions and decisions. As an example, the political offices on the third floor of the EPA are off-limits to most career staff. Lipton, *New York Times*, Aug. 11, 2017. Further, Administrator Pruitt travels with a 24-hour security detail, a highly unusual step for someone in his position. Justin Worland, Inside Scott Pruitt's Mission to Remake the EPA, *Time*, Oct. 26, 2017, *available at* http://time.com/4998279/company-man-in-washington/.

47.     John O'Grady, an EPA environmental scientist and president of the EPA's employee union, confirmed these recordkeeping practices and policies of Administrator Pruitt. Specifically, Mr. O'Grady stated that Administrator Pruitt "does not send emails out," disperses orders verbally, and acts "like a very good attorney not leaving a paper trail." Rebecca Leber, Meet the One EPA Employee Unafraid to Call Out Scott Pruitt, *Mother Jones*, Sept. 28, 2017, *available at* http://www.motherjones.com/environment/2017/09/meet-the-one-epa-employee-unafraid-to-call-out-scott-pruitt/. Mr. O'Grady contrasted Administrator Pruitt's practices with those of past administrations, both Republican and Democrat. According to Mr. O'Grady, "[e]very other administrator, whether it was Republican or Democrat, would come in and establish their principals and communicate as necessary." *Id.*

48.     At the same time Administrator Pruitt is engaging in recordkeeping practices that conflict directly with his obligations under the FRA, the agency is undergoing the most sweeping and consequential set of policy shifts in its history. As of December 15, 2017, the EPA had taken action to reverse at least 67 environmental rules. Nadja Popovich, Livia Albeck-Ripka, and

Kendra Pierre-Louis, 60 Environmental Rules on the Way Out Under Trump, *New York Times*, Dec. 15, 2017, *available at* https://www.nytimes.com/interactive/2017/10/05/climate/trump-environment-rules-reversed.html.

*CREW's Actions to Address Potential FRA Violations*

49.     On September 12, 2017, CREW sent a letter to Archivist Ferriero highlighting many of the actions Administrator Pruitt and the EPA have taken, or refused to take, that appear to violate the FRA. CREW requested that the Archivist investigate the EPA and make recommendations for any recordkeeping violations to be redressed.

50.     By letter dated September 25, 2017, Lawrence Brewer, NARA's Chief Records Officer for the U.S. Government, responded to CREW's September 12 letter. Mr. Brewer informed CREW that he had sent a letter to Steven Fine, EPA's Acting Assistant Administrator, Office of Environmental Information and Senior Agency Official for Records Management, requesting a meeting within 30 days.

51.     Hearing nothing further, counsel for CREW wrote to Mr. Brewer on November 8, 2017, asking whether a meeting had in fact taken place and whether Mr. Brewer could share any information regarding the issues CREW had raised. Mr. Brewer responded on November 9, 2017, stating he had "been in communication with the Senior Agency Official for [records management] at EPA and understand that senior management at EPA are finalizing proposed actions to communicate back to NARA."

52.     On December 19, 2017, counsel for CREW again wrote to Mr. Brewer requesting an update. Mr. Brewer responded on December 20, 2017, that he had talked to Mr. Fine about the matter. Mr. Brewer reported that Mr. Fine had told him that "the matter was discussed with

the EPA Chief of Staff" and "the CoS would be sending NARA formal correspondence next month responding to the issue."

53.     As of the filing of this complaint, CREW has not received any additional correspondence or information from NARA on this matter.

## CLAIM ONE
**(For a Declaratory Judgment that the Failure of Defendants Pruitt and the EPA to Adequately Document Agency Decisions is Arbitrary, Capricious, and Contrary to the FRA and For an Order Compelling Them to Make and Preserve All Records Containing Adequate and Proper Documentation of the Organization, Functions, Policies, Decisions, Procedures and Essential Transactions of the Agency)**

54.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

55.     The FRA requires the head of each federal agency to both make and preserve as federal records all records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency.

56.     Implementing NARA regulations specify, *inter alia*, that agency officials also must document the formulation and execution of basic policies and decisions and the taking of necessary actions, including all substantive decisions and commitments reached orally (person-to-person, by telecommunications, or in conference) or electronically. 36 C.F.R. § 1222.22. They further require the documentation of important board, committee, or staff meetings. *Id.*

57.     Despite these unambiguous requirements, Administrator Pruitt and other top EPA officials have affirmatively elected not to create and preserve records adequately documenting the organization, functions, policies, decisions, procedures and essential transactions of the EPA.

58.     Despite the FRA's unambiguous requirements, Administrator Pruitt and other top EPA officials have directed other EPA employees not to create and preserve records adequately documenting the organization, functions, policies, decisions, procedures and essential transactions of the EPA.

59.     In addition, Administrator Pruitt has knowingly and affirmatively refused to create records adequately documenting his own phone calls, meetings, and decisions, contrary to the requirements of the FRA.

60.     As a result, plaintiffs have been denied present and future access to important agency documents that would shed light on the conduct of EPA officials and the reasons for their actions and decisions.

61.     Plaintiffs therefore are entitled to a declaration that defendants Pruitt and the EPA are in violation of their statutory duties under 44 U.S.C. §§ 3101, 3301 and implementing NARA regulations, 36 C.F.R. § 1222.22, and an order compelling them to make and preserve as federal records all records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency.

**CLAIM TWO**
**(For a Declaratory Judgment that Defendants Pruitt and the EPA Have Failed to Establish and Maintain an Adequate Program to Preserve Federal Records in Compliance with the FRA and For an Order Compelling Defendants Pruitt and the EPA to Establish and Maintain an FRA-Compliant Program)**

62.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

63.     The FRA requires the head of each federal agency to establish and maintain a records management program that provides for effective controls over the agency's records and to cooperate with the Archivist in applying standards and procedures for the maintenance and security of the records deemed appropriate for preservation. 44 U.S.C. 3102. The head of each federal agency also must establish safeguards against the removal or loss of records the agency head determines to be necessary and required by regulations the Archivist promulgates. 44 U.S.C. § 3105.

64.     Notwithstanding the existence of a written records management policy dating back to 2015, Administrator Pruitt and other EPA officials have overridden or ignored their FRA obligations with impunity. The lack of effective controls over the agency's records program has resulted in the absence of records explaining or documenting key functions, policies, decisions, procedures and essential transactions of the EPA, thereby depriving plaintiff of present and future access to important agency documents that would shed light on the conduct of EPA officials and the bases for their actions and decisions.

65.     Further, the EPA's current recordkeeping policy fails to address the obligation the FRA and implementing NARA regulations impose on all agencies to memorialize in writing all substantive decisions and commitments reached orally (person-to-person, by telecommunications, or in conference) or electronically. This failure has deprived plaintiff of present and future access to information communicated orally or electronically at EPA that pertains to the conduct of EPA officials and the bases for their actions and decisions.

66.     Plaintiffs therefore are entitled to a declaratory order that the failure of defendants Pruitt and the EPA to maintain a program to adequately document agency decisions and activities is in violation of 5 U.S.C. §§ 702, 706, and an injunction compelling defendants Pruitt and the EPA to maintain a records management program to adequately document agency decisions and activities.

## CLAIM THREE
**(For a Declaratory Judgment that the Archivist and NARA Have Failed to Inform Administrator Pruitt in Writing of the EPA's FRA Violations, Make Recommendations for Their Correction, and Submit a Written Report to the President and Congress and an Order Compelling the Archivist and NARA to do so)**

67.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs.

68.     Under the FRA, the Archivist must "provide guidance and assistance to Federal agencies" and has the responsibility "to promulgate standards, procedures, and guidelines with

respect to records management and the conduct of records management studies." 44 U.S.C. §

2904.

69.     The FRA also requires the Archivist to take action to remediate FRA violations.

Specifically, "[w]hen the Archivist finds that a provision of any such chapter has been or is being

violated, the Archivist shall (1) inform in writing the head of the agency concerned of the

violation and make recommendations for its correction; and (2) unless satisfactory corrective

measures are demonstrably commenced within a reasonable time, submit a written report of the

matter to the President and the Congress." 44 U.S.C. § 2115.

70.     Despite knowledge of the numerous ways in which Administrator Pruitt and the

EPA have violated the FRA, the Archivist has failed to fully investigate these violations and

effectively inform Administrator Pruitt of NARA's investigative findings, has failed to make

recommendations to Administrator Pruitt and the EPA for their correction, and has taken no

other action despite the failure of the EPA to commence satisfactory corrective measures during

the more than four months that have elapsed since NARA brought these violations to the

attention of the EPA.

71.     Plaintiffs therefore are entitled to an order declaring NARA and the Archivist to

be in violation of their obligations under 44 U.S.C. § 2115 and compelling them to comply with

those obligations.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this Court:

1.      Declare that defendants Pruitt and the EPA have failed to create records that adequately and properly record the organization, functions, policies, decisions, procedures and essential transactions of the EPA.

2.      Issue injunctive relief compelling defendant Pruitt and the EPA to maintain an adequate and proper record of the EPA's organization, functions, policies, decisions, procedures and essential transactions.

3.      Declare that defendants Pruitt and the EPA have failed to maintain a program to adequately document the EPA's organization, functions, policies, decisions, procedures and essential transactions.

4.      Issue injunctive relief compelling defendant Pruitt and the EPA to maintain a program to adequately document the EPA's organization, functions, policies, decisions, procedures and essential transactions.

5.      Declare that defendants the Archivist and NARA have unlawfully failed to inform Administrator Pruitt in writing of the EPA's FRA violations, make recommendations for their correction, and submit a written report to the president and Congress.

6.      Issue injunctive relief compelling defendants the Archivist and NARA to inform Administrator Pruitt in writing of the EPA's FRA violations, make recommendations for their correction, and submit a written report to the president and Congress.

7.      Grant such other relief as the Court may deem just and proper.

Dated: February 22, 2018

Respectfully Submitted,

Anne L. Weismann, D.C. Bar No. 298190
Conor M. Shaw, D.C. Bar No. 1032074
Citizens for Responsibility and Ethics in
    Washington
455 Massachusetts Ave., N.W.,
Washington, D.C. 20001
Phone: (202) 408-5565
Email: aweismann@citizensforethics.org
Email: cshaw@citizensforethics.org

*Attorneys for Plaintiff CREW*

Paula Dinerstein, D.C. Bar No. 333971
Adam Carlesco, D.C. Bar No. 1601151
Public Employees for Environmental
    Responsibility
962 Wayne Ave., Suite 610
Silver Spring, MD  20910
Phone: (202) 265-7337
Email: pdinerstein@peer.org
Email: acarlesco@peer.org

*Attorneys for Plaintiff PEER*