**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

**CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON, *et al.*,**

     **Plaintiffs,**

        **v.**

**SCOTT PRUITT, Administrator, U.S. Environmental Protection Agency, *et al.*,**

     **Defendants.**

                                 **Civil Action No.  18-406 (JEB)**

---

## MEMORANDUM OPINION

Plaintiffs Citizens for Responsibility and Ethics in Washington (CREW) and Public Employees for Environmental Responsibility (PEER) are two nonprofit organizations dedicated to informing the public about governmental actions.  In this suit for injunctive and declaratory relief, they allege that former head of the Environmental Protection Agency Scott Pruitt and the Agency itself have been intentionally flouting the Federal Records Act by failing both to create certain records and to maintain a proper records-management policy.  They also allege that the National Archives and Record Administration (NARA) and its Archivist have been derelict in their duty to enforce the FRA against the Agency.  Defendants — Pruitt, the EPA, NARA, and the Archivist — now move to dismiss all claims.  Finding that all but one of Plaintiffs' counts can move forward, the Court will largely deny the Motion.

## I.    Background

The Court first sets out the relevant statutory and regulatory provisions at play here and then briefly describes the background of this litigation.

A.  <u>Statutory Framework</u>

The Federal Records Act, 44 U.S.C. §§ 2101-20, 2901-11, 3101-07, 3301-14, "governs the creation, management and disposal of federal records."  <u>Armstrong v. Bush</u>, 924 F.2d 282, 284 (D.C. Cir. 1991).  The Act requires agencies to create "standards and procedures" in order to ensure "[a]ccurate and complete documentation of the policies and transactions of the Federal Government."  44 U.S.C. § 2902.  Agency heads are tasked to "establish and maintain a[] . . . program for the . . . management of the records of the agency,"  <u>id.</u> § 3102, and must "make and preserve records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures, and essential transactions of the agency."  <u>Id.</u> § 3101.  The Archivist has a central oversight role, "provid[ing] guidance and assistance to Federal agencies" by "promulgat[ing] standards, procedures, and guidelines with respect to records management."  <u>Id.</u> § 2904.  Pursuant to this authority, the Archivist has promulgated regulations detailing what types of records agencies must create and maintain as well as the requirements for agency recordkeeping policies.  <u>See</u> 36 C.F.R. §§ 1222.22-1222.34.  If the Archivist finds that an agency has failed to comply with its duties under the FRA, NARA must "inform [it] in writing . . . of the violation and make recommendations for its correction; and [] unless satisfactory corrective measures are demonstrably commenced within a reasonable time, submit a written report of the matter to the President and the Congress."  44 U.S.C. § 2115.

B.  <u>Factual History</u>

CREW and PEER are two nonprofit "public interest organization[s]" dedicated, respectively, to informing "citizens . . . about the activities of government officials" and "promot[ing] public understanding and debate concerning key and current public policy issues."  Compl., ¶¶ 5, 9.  To that end, both groups have "a significant interest in ensuring agency

compliance with records responsibilities under the FRA," id., ¶¶ 6, 10, and frequently file Freedom of Information Act requests to obtain agency records. Id., ¶¶ 5, 7, 11-12.

According to Plaintiffs, Pruitt's arrival at the EPA ushered in a culture of secrecy. Id., ¶ 36. He and others "verbally instructed EPA staff not to create a written record about major substantive matters" and, during meetings, prohibited employees from using cell phones or taking notes. Id., ¶¶ 38-39. Indeed, Pruitt was so keen to avoid written records that he "used telephones other than his own to make important phone calls to avoid their appearing on his own call log," "avoid[ed] using emails that create a record of his statements," and commissioned a soundproof "privacy booth" for the cost of almost $25,000. Id., ¶¶ 40, 45.

Such secrecy, Plaintiffs allege, has impeded their ability to obtain FOIA records, id., ¶¶ 42-44, leading them to request help from NARA. On September 12, 2017, CREW sent a letter to the Archivist, highlighting the EPA's actions and requesting that he investigate and make recommendations to redress any recordkeeping violations. Id., ¶ 49. Two weeks later, NARA responded, stating that it had alerted an EPA official and requested a meeting within 30 days. Id., ¶ 50. CREW continued to correspond through the end of 2017, but NARA has not yet provided a detailed explanation of what (if any) investigation occurred and the result therefrom. Id., ¶ 53.

Believing that they had given NARA enough time to resolve this issue, Plaintiffs filed this three-count suit on February 22, 2018. Count I charges Pruitt and the EPA with violating the FRA's requirement to create and preserve records, and Count II alleges that the Agency lacks a proper records-management policy. In Count III, Plaintiffs claim that NARA and the Archivist have neglected their duty to investigate and redress EPA's statutory violations. Defendants now move to dismiss, asserting that Plaintiffs' counts are either non-justiciable or fail to state a claim.

## II.    Legal Standard

In evaluating Defendants' Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant [P]laintiff 'the benefit of all inferences that can be derived from the facts alleged.'"  Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted); see also Jerome Stevens Pharm., Inc. v. FDA, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The pleading rules are "not meant to impose a great burden upon a plaintiff," Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005), and it must thus be given every favorable inference that may be drawn from the allegations of fact.  Sparrow, 216 F.3d at 1113.

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of an action where a complaint fails "to state a claim upon which relief can be granted."  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).  The Court need not accept as true, then, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint.  Trudeau v. Fed. Trade Comm'n, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (internal quotation marks omitted).  For a plaintiff to survive a 12(b)(6) motion, the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

The standard to survive a motion to dismiss under Rule 12(b)(1) is less forgiving.  Under this Rule, Plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  A court also has

an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Id. at 13-14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987) (alteration in original)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens, 402 F.3d at 1253; see also Venetian Casino Resort, LLC v. EEOC, 409 F.3d 359, 366 (D.C. Cir. 2005).

III.    **Analysis**

The Court begins with a brief overview of the law before turning to Plaintiffs' specific claims.

A.    Judicial Review of FRA

"Because [the] FRA is primarily directed at the preservation of federal records, the crux of the statute lies in its disposal provisions." Competitive Enterp. Inst. v. EPA, 67 F. Supp. 3d 23, 26 (D.D.C. 2014) (emphasis added). The bulk of the admittedly scant precedent addressing judicial review of agency obligations under the Act also, unsurprisingly, concerns the destruction of records. Although the parties here disagree as to whether such cases apply to the EPA's obligation to create records, the Court nonetheless begins its discussion there.

In Kissinger v. Reporters Committee for Freedom of the Press, 445 U.S. 136 (1980), plaintiffs sought access through FOIA to official papers from Henry Kissinger's time as the National Security Advisor and at the State Department, which had been transferred to the Library of Congress. They alleged that Kissinger's unilateral removal of the papers violated § 3314 of

the FRA, which prescribes the "exclusive" methods by which records may be "alienated or destroyed."  Despite the presumption in favor of judicial review of agency action, see Abbott Labs. v. Gardner, 387 U.S. 136, 140-41 (1967), the Supreme Court held that it could not exercise jurisdiction over the claim because the FRA did not provide an express or implied private right of action.  Kissinger, 445 U.S. at 148.  The Act, the Court reasoned, "establishes only one remedy for the improper removal of a record from the agency."  Id.  That remedy is found in 44 U.S.C. § 3106, which mandates that agency heads "notify the Archivist of any actual, impending, or threatened unlawful removal, defacing, alteration, deletion, erasure, or destruction of records in the custody of the agency" and work with the Archivist to "initiate action through the Attorney General for the recovery of records . . . [that] have been unlawfully removed."  If the agency head fails to do so, the Archivist is tasked with notifying the Attorney General "to initiate such an action, and shall notify the Congress when such a request has been made."  Id.  Relying on the "elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it," the Court held that "responsibility" for violations of the FRA "is vested in the administrative authorities," not private parties.  Kissinger, 445 U.S. at 149-50 (citation omitted).

Although Kissinger thus held that private litigants cannot state a direct claim for legal relief under the FRA, the D.C. Circuit subsequently determined that, in some cases, the APA can provide a jurisdictional hook for a suit alleging noncompliance with the FRA.  In Armstrong v. Bush, 924 F.2d 282 (D.C. Cir. 1991), a group of plaintiffs challenged an agency's proposed destruction of records under § 3106.  The court evaluated three types of agency action: (1) agency employees' "destroying records in contravention of the . . . recordkeeping guidelines and directives"; (2) the agency's failure to employ adequate recordkeeping guidelines and directives;

and (3) the agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General.  Id. at 291, 294-95.  While the first was not reviewable, the court held that the APA provided a private right of action for the latter two.

In distinguishing among the claims, the court began with "the presumption in favor of judicial review."  Id. at 291 (quoting Abbott Labs., 387 U.S. at 141).  Given the FRA's "prescribed method of action" for unlawful destruction in § 3106, the court held nonetheless that private litigants were "preclud[ed] from suing directly to enjoin agency actions in contravention of" the record-removal guidelines.  Id. at 294.  In other words, § 3106's delegation of mandatory enforcement authority to the Attorney General is "clear and convincing evidence" that "Congress chose to ensure compliance with the FRA through administrative enforcement and congressional oversight rather than judicial review."  Id. at 291 (quoting Abbott Labs., 387 U.S. at 141).  The claim that agency employees were not complying with such guidelines, then, was barred from judicial review.

The court, however, firmly rejected the Government's argument that § 3106 precludes all APA-based private suits and found that the built-in administrative- and congressional-oversight mechanisms of the FRA were "insufficient evidence to overcome the presumption in favor of judicial review."  Id. at 292.  Indeed, it specifically determined that it could review whether an agency has complied with § 3102, which mandates that the head of each agency establish and maintain a records-management program that is consistent with the Archivist's promulgated regulations.  Id. at 293.  "In sum," the court held, "neither the statutory scheme nor the legislative history evinces a congressional intent to preclude judicial review of the adequacy of the [agency's] recordkeeping guidelines and directives."  Id.

Finally, the court held that "it would not be inconsistent with <u>Kissinger</u> or the FRA to permit judicial review of the agency head's or Archivist's refusal to seek the initiation of an enforcement action by the Attorney General." <u>Id.</u> at 295. Such review of statutorily mandated administrative obligations "reinforces the FRA scheme by ensuring that the administrative enforcement and congressional oversight provisions will operate as Congress intended." <u>Id.</u>

To sum up, therefore, under <u>Armstrong</u>, courts may not entertain private suits alleging that agencies have improperly destroyed or removed records, but they may consider ones challenging whether agency guidelines that permit destruction of certain records are adequate under the FRA and ones alleging that the agency head or Archivist improperly refused to seek initiation of an enforcement action by the Attorney General.

Turning now to Plaintiffs' claims, the Court will first review those against the EPA Defendants and then move to the NARA Defendants.

B. <u>EPA Defendants</u>

Plaintiffs' first two counts concern the EPA Defendants' alleged non-adherence to the FRA and its implementing regulations. Count I seeks a declaratory judgment that the Agency's practice of refusing to create records of substantive decisions violates the Act, and Count II challenges the sufficiency of the EPA's current recordkeeping policy.

1. *Count I*

Relying on the APA, CREW and PEER allege that the Agency's reluctance to leave a paper trail is contrary to the FRA. Specifically, Plaintiffs believe that Pruitt and the EPA engaged in a practice violating § 3101, which requires agencies to "make and preserve records containing adequate and proper documentation of the organization, function, policies, decisions, procedures, and essential transactions of the agency." Defendants rejoin that <u>Armstrong</u>

specifically bars claims that they are refusing to maintain records, as opposed to claims challenging the adequacy of their guidelines. The Court cannot agree.

It begins with two general presumptions: (1) that "Congress does not intend administrative agencies, agents of Congress' own creation, to ignore clear . . . regulatory [or] statutory . . . commands," Heckler v. Chaney, 470 U.S. 821, 839 (1985) (Brennan, J., concurring), and (2) that in favor of judicial review. See Abbott Labs., 387 U.S. at 141. With those in mind, the Court must decide whether Armstrong's logic applies only to § 3106's provision governing destruction of records or whether, as the Government advocates, it reaches more broadly into records creation under § 3101 as well.

Defendants heavily rely on the FRA's comprehensive system of administrative enforcement, see MTD at 6-7, and the "extensive administrative role" for the Archivist. See Reply at 4. In their view, this renders unnecessary any robust judicial review. For example, 44 U.S.C. § 2115(b) requires the Archivist, upon finding an FRA violation, to inform the head of the concerned agency and, if no satisfactory measures are taken, report the matter to the President and Congress. Yet this provision and the Archivist's other monitoring and oversight roles were also in force when Armstrong was decided. The D.C. Circuit there, as just discussed, nevertheless held that such oversight, standing alone, was "insufficient evidence to overcome the presumption in favor of judicial review." 924 F.2d at 292, and, indeed, permitted two types of private suits: (1) for inadequate guidelines and (2) for refusal to involve the Attorney General. Id. at 292, 295.

Yet, Defendants would rejoin, Armstrong explicitly denied jurisdiction for private challenges to discrete document destruction in violation of the FRA. That is indeed true, but Plaintiffs persuasively distinguish § 3106 from their creation claim tethered to § 3101. Only in

the former is there a clear enforcement provision — namely, recourse to the Attorney General. No other provision of the FRA requires the executive branch to commence action for a violation of the Act. Absent such recourse, the Court does not find "clear and convincing evidence" that Congress intended to preclude judicial review of a practice of refusing to create records. See Abbott Labs., 387 U.S. at 141; see also Armstrong v. Exec. Office of the Pres., 1 F.3d 1274, 1282-87 (D.C. Cir. 1993) (upholding district court's injunction on remand to temporarily preserve certain records); Am. Friends Serv. Comm. v. Webster, 720 F.2d 29, 41 (D.C. Cir. 1983) (claim that agency failed to preserve records was not committed to agency discretion by law).

Permitting judicial review also comports with longstanding precedents concerning APA review generally. When deciding whether agency action is the "proper subject of judicial review," courts should consider "[1] the need for judicial supervision to safeguard the interests of the plaintiffs; [2] the impact of review on the effectiveness of the agency in carrying out its congressionally assigned role; and [3] the appropriateness of the issues raised for judicial review." Nat'l Res. Def. Council, Inc. v. SEC, 606 F.2d 1031, 1043-44 (D.C. Cir. 1979). Plaintiffs, prolific FOIA requesters, clearly have an interest in the creation of records, and the availability of such records is critical to their missions. "Congress was certainly aware that agencies, left to themselves, have a built-in incentive" not to create records of unpopular decisions or, "less nefariously, just do not think about preserving 'information necessary to protect the legal and financial rights . . . of persons directly affected by the agency's activities.'" American Friends, 720 F.2d at 41 (quoting 44 U.S.C. § 3101). Given the multitude of records that may require creation, it is also safe to assume that Congress did not intend the Archivist's monitoring capabilities to completely protect against all improper agency practices. Id. Private

litigation (and judicial review thereof) thus serves as a necessary "check" on the Archivist's supervision of EPA's practices here.  Id.

Second, the Court recognizes that allowing judicial review of § 3101 claims may affect EPA's ability to carry out its role.  Yet the specter Defendants raise of a flood of future suits challenging every purported FRA violation misunderstands the Court's ruling.  The APA only permits challenges to "final agency action."  5 U.S.C. § 704.  Agency action, in turn, "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent," id. § 551(13), as well as the denial of or failure to take any of these listed actions or their equivalents.  See Norton v. S. Utah Wilderness All., 542 U.S. 55, 62.  While future plaintiffs may challenge the EPA's actions, in the aggregate, of refusing to create certain records, they may not demand judicial review of isolated acts allegedly in violation of § 3101.  See Ramirez v. ICE, 2018 WL 1882861, at *8; see also SUWA, 542 U.S. at 67 ("The prospect of pervasive oversight by federal courts over the manner . . . of agency compliance with such congressional directives is not contemplated by the APA."); Armstrong, 924 F.2d at 293-94 ("[A]gency personnel, not the court, will actually decide whether specific documents . . . constitute 'records' under the guidelines.").

Finally, Armstrong implies that such claims are appropriate for judicial review.  In rejecting the Government's argument that the adequacy of agency guidelines was committed to agency discretion by law and was therefore unreviewable, the court found that "[t]he FRA clearly provides sufficiently detailed standards regarding what material the agencies must retain." 924 F.2d at 293.  The Court sees no reason why the result would be any different for the policies and regulations regarding what records an agency must create.  "[T]he FRA reflects a congressional intent to ensure that agencies adequately document their policies and decisions."

Id. at 292. Allowing judicial review of the agency's failure to create such documents "will frustrate neither the intent of Congress nor the FRA statutory scheme designed to implement that intent." Id. at 293. An agency policy — formal or otherwise — that refuses to "make . . . records" in accordance with the FRA is reviewable. See 44 U.S.C. § 3101; see also Armstrong v. Exec. Off. of the Pres., 810 F. Supp. 335, 341 (D.D.C. 1993). Count I thus may proceed.

### 2. *Count II*

Plaintiffs next claim that the Agency's current recordkeeping policy does not conform to the FRA and implementing NARA regulations. See Compl., ¶¶ 64-65. The defense concedes — and the Court agrees — that this challenge to the sufficiency of EPA guidelines can be heard here. See MTD at 8; Armstrong, 924 F.2d at 293 (district courts are "authorized to hear plaintiffs' APA claim that the [agency's] recordkeeping guidelines and directives do not adequately" conform to the FRA). Despite so conceding, the Government nevertheless contends that the count is infirm because its policy is sufficient. See MTD at 8-10.

Under the FRA, agencies must "establish and maintain" a recordkeeping program that provides "effective controls over the creation and over the maintenance and use of records in the conduct of current business" and complies with the Act and implementing NARA regulations. See 44 U.S.C. § 3102. Here, Plaintiffs allege that the Agency's policies fail to incorporate a NARA regulation that requires agencies to "prescribe the creation and maintenance of records that [d]ocument . . . the formulation and execution of all basic policies and decisions and . . . all substantive decisions and commitments reached orally." 36 C.F.R. § 1222.22. Defendants, through a declaration and exhibits attached to their Motion, argue that the EPA does, in fact, have such a policy. See MTD, Attach. 1 (Declaration of John B. Ellis), Exhs. A-C. The Court

must first decide whether it may consider Defendants' evidence; if it can, it next analyzes whether the documents are fatal to the claim.

The Court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501-02 (1975); Haase v. Sessions, 835 F.2d 902, 907 (D.C. Cir. 1987). It may also consider "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies." Hinton v. Corrections Corp. of America, 624 F. Supp. 2d 45, 46 (D.D.C. 2009) (internal quotation marks and citation omitted). The Ellis Declaration includes the EPA's Records Management Policy, an FAQ from the Agency's intranet page with information about verbal communications, and a copy of a training slide regarding oral records. See Ellis Decl., Exhs. A-C. Plaintiffs' Complaint repeatedly mentions the EPA's recordkeeping policy, see, e.g., Compl., ¶¶ 31-34, 63-66, and appears to concede that the Agency Records Management Policy attached as Exhibit A to the Declaration is the policy to which the Complaint refers. See Opp. at 17. The Court therefore may consider that document. The other two documents are not incorporated by reference or relied upon by the Complaint. Plaintiffs allege that the EPA's official records-management program is inadequate by FRA guidelines. See Compl., ¶ 65. The additional exhibits, which the Government refers to as "guidance" and "training" for employees, see MTD at 9; Ellis Decl., ¶ 7, are not part of the EPA's formal records policy instituted pursuant to the FRA and are therefore "outside of the pleadings." The Court, accordingly, will not consider them.

Even after reviewing the EPA Records Management Policy, Plaintiffs pass the pleading hurdle with little effort. That document does not mention any mandate to create records for "substantive decisions and commitments reached orally" as required by NARA. See 36 C.F.R.

13

§ 1222.22. Plaintiffs' allegation that the program is insufficient under the FRA, therefore, is a plausible claim upon which this Court can grant relief. See Compl., ¶ 64 (alleging that EPA's inadequate records-management program "depriv[es] plaintiff[s] of present and future access to important agency documents that would shed light on the conduct of EPA officials and the bases for their actions and decisions"). Count II thus survives.

C. NARA Defendants

Plaintiffs' final claim alleges that the Archivist and NARA failed to enforce the FRA against the EPA Defendants. Under § 2115 of the Act, "[w]hen the Archivist finds that a provision of [the FRA] has been or is being violated, the Archivist shall (1) inform in writing the head of the agency concerned of the violation and make recommendations for its correction; and (2) unless satisfactory corrective measures are demonstrably commenced within a reasonable time, submit a written report of the matter to the President and the Congress." 44 U.S.C. § 2115(b). The finding of a violation is thus a condition precedent to the Archivist's statutory obligation to act. See Sierra Club v. Jackson, 724 F. Supp. 2d 33, 41 (D.D.C. 2010) ("Statutory grants of enforcement authority commonly condition enforcement on a prior finding, and courts recognize those conditions precedent as a prerequisite to an agency's exercise of its authority."); Judicial Watch, Inc. v. Kerry, 844 F.3d 952, 954 (D.C. Cir. 2016) (APA "permits a claim that an agency failed to take a discrete agency action that it is required to take") (internal quotation marks and citation omitted) (final emphasis omitted).

The parties disagree as to when § 2115's notification procedures attach. The Government argues that the statute's obligations are not triggered until "the Archivist concludes that an agency has violated or is violating the FRA." MTD at 12. Plaintiffs retort that such an argument attempts to "impose on the Archivist an obligation to make a formal finding," which the statute

does not require.  See Opp. at 3.  In their view, after CREW sent a letter to the Archivist "laying out the multiple ways in which Administrator Pruitt and the EPA have acted in apparent violation of the FRA," Plaintiffs believe that "NARA made initial 'investigative findings'" and "took initial steps toward satisfying the notification requirement."  Opp. at 20-21.  This, they claim, is enough to trigger the mandatory enforcement provisions of § 2115 or, at the very least, constitutes a failure to act, entitling them to relief under the APA.  Id. at 23.

The Court need not amble down the path of statutory interpretation because the Complaint fails on a more fundamental level: it never alleges that the Archivist made a finding (formal or otherwise) of a violation.  True, CREW sent a letter notifying him of what it thought were FRA-compliance issues.  See Compl., ¶¶ 49-52.  The Complaint, however, never states that the Archivist replied or indicated in any way that a violation had occurred.  In response to CREW's letter, the Archivist "informed CREW that he had sent a letter to . . . EPA's Acting Assistant Administrator . . . requesting a meeting within 30 days."  Id., ¶ 50.  A month and a half later, CREW again contacted NARA to find out "whether a meeting had in fact taken place and whether [the Agency] could share any information regarding the issues CREW had raised."  Id., ¶ 51.  NARA replied only that it had "been in communication with the Senior Agency Official for [records management] at EPA and underst[oo]d that senior management at EPA are finalizing proposed actions to communicate back to [it]."  Id.  When pressed the following month for an update, NARA indicated that "the matter was discussed with the EPA Chief of Staff" and it was expecting "formal correspondence next month responding to the issue."  Id., ¶ 52.  Plaintiffs' failure to allege that the Archivist made any actual finding of a violation — the condition precedent for § 2115's obligations — is fatal to Count III.  The Court will accordingly dismiss it.

### III. Conclusion

For the above reasons, the Court will deny Defendants' Motion as to Counts I and II and grant it as to Count III.  A separate Order consistent with this Opinion will be issued this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: July 24, 2018