UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **ANDREW WHEELER,** Acting Administrator, U.S. Environmental Protection Agency, *et al.*, <br><br> Defendants. | Civil Action No. 18-406 (JEB) |

## MEMORANDUM OPINION

Just under a year ago, two government-watchdog groups filed suit accusing Scott Pruitt, who was then leading the Environmental Protection Agency, of deliberately setting up a system to skirt federal-records laws. Since then, the landscape at EPA has changed. As even a casual reader of the news will know, Pruitt is no longer at the Agency's helm. Perhaps less well known, but equally significant for this matter, EPA created and distributed a revised records-management policy that responds to some of the shortcomings pointed out by this suit. These developments offer good news and bad news for Plaintiffs. The good news is that they address the very circumstances that motivated this Complaint. By promulgating a new policy, EPA did voluntarily what the Court likely would have required it to do had Plaintiffs prevailed. The bad news is that these changes also bar the watchdogs' suit from moving forward. For a case cannot proceed if the controversy underlying it — namely, Pruitt's and EPA's allegedly defective policy regarding written-record creation — no longer exists. The Court, therefore, will grant Defendants' Motion to Dismiss the case as moot.

**I.     Background**

Like many cases involving federal records, this tale starts with the press. During the late summer and early fall of 2017, multiple news agencies reported that Pruitt had taken extensive steps to avoid creating records that could expose his decisions as EPA Administrator to public scrutiny. See ECF No. 1 (Complaint), ¶¶ 38–41, 46–47. These stories painted a picture of a leader obsessed with secrecy who issued an array of directives aimed at ensuring that his actions left little paper trail. Id.

Armed with these reports, two government-watchdog groups took action. Plaintiffs Citizens for Responsibility and Ethics in Washington — which goes by the acronym CREW — and Public Employees for Environmental Responsibility — dubbed PEER — are nonprofit public-interest organizations that commonly employ Freedom of Information Act requests to further their advocacy, research, education, and litigation functions. Id., ¶¶ 5, 7, 9, 11. For CREW, these functions revolve around ensuring the integrity of public officials. Id., ¶ 5. PEER's focus is on the environment. Id., ¶ 9.

CREW and PEER (which, for the sake of simplicity, the Court will refer to jointly as "CREW") filed a three-count Complaint against Pruitt, EPA, and two other Defendants who — as the Court will explain in a second — no longer have a role in this play: the National Archives and Records Administration and its leader, Archivist David S. Ferriero. Count I alleged that Pruitt was engaging in a consistent practice of deliberately failing to create records in contravention of the Federal Records Act and its implementing regulations. Id., ¶¶ 54–61. Count II faulted EPA for having a deficient official records-management program. Id., ¶¶ 62–66. The third count took a different tack and extended the ambit of those responsible beyond the

Agency. It alleged that the Archivist is asleep at the wheel and has neglected his duty to investigate Pruitt's violations of the FRA. Id., ¶¶ 67–71.

Defendants responded with a Motion to Dismiss. They first argued that the allegations in Count I were judicially unreviewable. The Court disagreed. Following a lengthy exposition of the relevant caselaw, it concluded that, while a court may not entertain a suit challenging an agency's handling of isolated records, it may consider a case asserting that the agency's aggregate practice or policy — whether formal or informal — is inconsistent with the FRA's requirements. See CREW v. Pruitt, 319 F. Supp. 3d 252, 258–60 (D.D.C. 2018). As to Count II, EPA's contention that its official policy complied with the FRA and its implementing regulations similarly ran aground. Those regulations impose a mandate to create records for "substantive decisions and commitments reached orally," 36 C.F.R. § 1222.22(e), which Plaintiffs alleged EPA's official policy conspicuously lacked. Id. at 260–61. While Defendants came up short on Counts I and II in their Motion, they fared better on the third. That was because the Court found that, contrary to Plaintiffs' suggestion, the Complaint never alleged that the Archivist had made a finding of an FRA violation. Id. at 262. Such a finding is a condition precedent to his obligation to act. Id. With that allegation absent, no case challenging the Archivist's completion of his duties under the FRA could proceed. The Court therefore dismissed Count III, leaving Counts I and II standing.

But before this suit could gather much steam, the Agency changed course. Most notably, Pruitt heeded the myriad calls for his resignation and left EPA in July 2018. Then, on August 22, EPA adopted a new "Interim Records Management Policy," which it emailed to all staff and many contractors. See ECF No. 21 (Def. Motion), Attach. 1 (Second Declaration of John B. Ellis, EPA Agency Records Officer), ¶¶ 4–7. As the Agency's email to its staff reflects, this

3

revised policy "[h]ighlights the obligation to document substantive decisions reached orally." Ellis Decl., Exh. B (Email from Vaughn Noga to EPA Employees). The email also informed its recipients that the new policy "supersedes any prior policy to the extent such policy is inconsistent with this Interim Records Management Policy." Id.

Not long after this communication, Defendants filed the current Motion, seeking a dismissal of the case as moot given EPA's revised policy. In the alternative, Defendants moved for summary judgment, contending that the Agency has always complied with the FRA. Because the Court agrees that developments subsequent to CREW's filing of the Complaint moot this action, it does not reach the issue of summary judgment.

## II. Legal Standard

In evaluating Defendants' renewed Motion to Dismiss, the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged.'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)); see also Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) ("[I]n passing on a motion to dismiss, whether on the ground of lack of jurisdiction over the subject matter or for failure to state a cause of action, the allegations of the complaint should be construed favorably to the pleader."). The Court need not accept as true, however, "a legal conclusion couched as a factual allegation," nor an inference unsupported by the facts set forth in the Complaint. See Trudeau v. FTC, 456 F.3d 178, 193 (D.C. Cir. 2006) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss under Rule 12(b)(1), a plaintiff generally bears the burden of proving that the Court has subject-matter jurisdiction to hear its claims. See DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 342 & n.3 (2006); Arpaio v. Obama, 797 F.3d 11, 19 (D.C. Cir.

2015). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), which includes the obligation to consider issues of mootness. See Mine Reclamation Corp. v. FERC, 30 F.3d 1519, 1522 (D.C. Cir. 1994). For this reason, "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving a 12(b)(1) motion' than in resolving a 12(b)(6) motion for failure to state a claim." Grand Lodge, 185 F. Supp. 2d at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1350 (2d ed. 1987)). Additionally, unlike with a motion to dismiss under Rule 12(b)(6), the Court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Unlike some other jurisdictional issues, the party asserting mootness — here, the Government — bears the burden of establishing that the case is in fact moot. See Honeywell Int'l, Inc. v. NRC, 628 F.3d 568, 576 (D.C. Cir. 2010). This burden remains where the defendant contends that its voluntary action deprives the court of jurisdiction. In such a case, the defendant bears the "heavy" burden of "demonstrating that there is no reasonable expectation that the wrong will be repeated." Cierco v. Mnuchin, 857 F.3d 407, 415 (D.C. Cir. 2017) (citation omitted).

### III. Analysis

Article III of the Constitution limits federal courts' jurisdiction to "actual, ongoing controversies." Honig v. Doe, 484 U.S. 305, 317 (1988). Two interrelated doctrines — standing and mootness — give life to this requirement. While standing probes "the plaintiff's 'concrete stake' at the outset of the litigation, mootness depends on whether the parties maintain a

5

'continuing interest' in the litigation today." Hardaway v. Dist. of Columbia Housing Auth., 843 F.3d 973, 979 (D.C. Cir. 2016) (citation omitted). For that reason, "mootness must be assessed at 'all stages' of the litigation to ensure a live controversy remains." Aref v. Lynch, 833 F.3d 242, 250 (D.C. Cir. 2016) (citation omitted). The Court must thus determine whether "events have so transpired" such that a judicial "decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." Am. Bar Ass'n v. FTC, 636 F.3d 641, 645 (D.C. Cir. 2011). If "intervening events make it impossible to grant the prevailing party effective relief," no live controversy remains. See Lemon v. Geren, 514 F.3d 1312, 1315 (D.C. Cir. 2008) (citation omitted). Simply put, a case is moot if "the parties lack a legally cognizable interest in the outcome." Already, LLC v. Nike, Inc., 568 U.S. 85, 91 (2013) (quoting Murphy v. Hunt, 955 U.S. 478, 481 (1982)). The Court would then lack jurisdiction and must dismiss the case. See Cierco, 857 F.3d at 414.

The Court's analysis of whether there remains a live controversy here proceeds in three stages. It separately tackles the question of whether recent events have sufficient power to moot each of Plaintiffs' two counts — *i.e.*, whether they do, in fact, take care of the concerns articulated in CREW's Complaint. The Court last asks whether the fact that one of these events — the EPA's new policy — is the result of the Agency's voluntary conduct, rather than a court-imposed mandate, changes the analysis. This requires consideration of the doctrine of voluntary cessation. The Court is cognizant that most courts, when faced with an argument about mootness that derives from the defendant's voluntary conduct, proceed directly to voluntary cessation. Where there is doubt that this conduct even can moot the case, however, the Court thinks it prudent to address this threshold issue first. For if the acts are not capable of depriving the Court

of jurisdiction, then it matters not whether Defendants can revert to their old ways. The action would remain live regardless.

    A.  Count I

Plaintiffs' first count takes aim at Pruitt's conduct while leading EPA. The instances of questionable behavior that serve as the factual underpinnings of his allegedly deficient practices are legion. Paraphrasing primarily a report from the New York Times, CREW contends that Pruitt "verbally instructed EPA staff not to create a written record about major substantive matters" and "directed staff not to take notes" during meetings. See Compl., ¶¶ 38–39. Following his own directive, Pruitt delivered instructions orally and avoided using email, so that no written records of his statements survived. Id., ¶ 40. These tactics permitted him to "operate[] in extensive secrecy and avoid[] creating an adequate record of his and the EPA's actions." Id., ¶ 36. This secrecy, the Complaint alleges, extended beyond records of decisions. Pruitt went so far as to prohibit most career staff from visiting the floor on which the Agency's political staff resided. Id., ¶ 46. He was also concerned about his phone calls. So, the Complaint continues, Pruitt "reportedly . . . used telephones other than his own to make important calls to avoid their appearance on his own call log." Id., ¶ 40. All this, Plaintiffs say, created a recordkeeping practice "at [Pruitt's] direction" that ran afoul of the mandate imposed by the FRA and its implementing regulations. Id., ¶¶ 42, 54–58.

Pruitt's embattled tenure at EPA, however, has come to an end, as he resigned on July 6, 2018. Whatever policies are now in place at the Agency, they no longer exist "at his direction." Id., ¶ 42. Someone else has taken over that authority — namely, Acting Administrator (and substituted Defendant) Andrew Wheeler. Given that Plaintiffs seek only forward-looking relief, this development undermines the remaining vitality of their claim.

7

To be sure, as CREW points out, the Complaint includes language that extends its allegations beyond Pruitt. By the time the Complaint concludes its recitation of the facts and articulates its claims, it has framed its beef as one with both Pruitt "and other top EPA officials." Id., ¶¶ 57–58; ECF No. 24 (Plaintiffs' Opposition) at 5, 6. But these conclusory statements bely the gravamen of the claim. The relevant facts focus almost exclusively on Pruitt. CREW captions the relevant portion of the facts "<u>Administrator Pruitt</u>'s Failure to Create a Record of Agency Business." Compl., ¶ 36 (emphasis added). Within this section, Plaintiffs catalog, in almost a dozen separate paragraphs, Pruitt's alleged deficiencies. Id., ¶¶ 36, 38–42, 45–48. Other than one brief allegation in which they lump together "EPA Administrator Pruitt and other EPA political appointees," id., ¶ 38, Plaintiffs do not lodge a grievance against the conduct of any other member of EPA. In fact, the Complaint does not even identify any other official at the Agency, nor is there a single relevant allegation that exists independent of Pruitt's conduct. On the contrary, the mentions of other EPA officials are best read as referring to Pruitt's staff acting at his direction. Language in the Complaint says as much, faulting the "failure of Administrator Pruitt and his staff, <u>at his direction</u>." Id., ¶ 42 (emphasis added).

In denying Defendants' first Motion to Dismiss, the Court relied on these references to Pruitt's actions to conclude that Plaintiffs had sufficiently alleged a "policy" or "practice" of failing to create records. See CREW, 319 F. Supp. 3d at 259–60. The Complaint lacks any allegation to support an inference that this policy or practice would continue, or exist apart from, the actions of Pruitt. Rather, it contains support for the opposite conclusion: CREW points out that Pruitt's conduct stood in stark contrast to that of "[e]very other administrator." Compl., ¶ 47. Wheeler now leads the EPA. This change raises, in the Court's mind, serious doubts about

8

whether a case can proceed when the link between its claim for relief and the factual allegations that give rise to that plausible claim is severed.

The reason for this doubt is straightforward. For a controversy to remain live, Plaintiffs must maintain a "legally cognizable interest" in the suit and must therefore be able to point to an ongoing injury. See Already, LLC, 568 U.S. at 91. This injury must meet a certain level of definiteness: "To save a case from mootness the ongoing injury must be more than a remote possibility, not conjectural, more than speculative." Liu v. INS, 274 F.3d 533, 535 (D.C. Cir. 2001) (internal quotation marks and citation omitted); see also Leonard v. U.S. Dep't of Def., 598 F. App'x 9, 10 (D.C. Cir. Mar. 20, 2016) (unpublished) (holding that when plaintiff only "seek[s] injunctive and declaratory relief," her claim is rendered moot when she does not "allege an ongoing or imminent injury"). Here, CREW's Complaint alleges that Pruitt had an informal or unwritten policy that resulted in inadequate recordkeeping. No plausible assertion — much less one that is not conjectural or speculative — contends that this informal policy would or does continue to exist independent of Pruitt. Because Plaintiffs' non-conclusory allegations of harm are inextricably tied to Pruitt's tenure at the Agency, and that tenure has come to an end, so has the vitality of their claim.

The scope of available relief buttresses this conclusion. When "intervening events make it impossible to grant . . . effective relief," the case is moot. See Lemon, 514 F.3d at 1315. Plaintiffs here seek only declaratory and injunctive relief. Had they prevailed on Count I and demonstrated that Pruitt and his staff maintained a recordkeeping practice or policy that was out of step with the FRA, the Court possibly could have required a reversal of this course. If Pruitt had remained at EPA's helm, the Court could conceivably have ordered him and his staff to follow the FRA — provided that such an order could be squared with the Court's prior Opinion

9

holding that the FRA only permits Plaintiffs to challenge the Agency's aggregate practice or policy, rather than isolated acts of noncompliance. But this relief, of course, is no longer possible. Pruitt is gone. With his departure, there is little alleged in Count I left to remedy.

To the extent CREW could claim an entitlement to broader relief, it again faces a roadblock. Perhaps Plaintiffs could argue that a hangover from Pruitt's conduct remains at EPA. Indeed, CREW says that it is "likely" to seek a curative communication from "EPA's leadership disavowing prior instructions." Pl. Opp. at 14. Putting to the side any question about whether it would be proper for the Court to order such a communication, EPA has already taken this action. Vaughn Noga, who serves as its Senior Agency Official for Records Management, sent a notice to all staff informing them of their recordkeeping obligations and noting that the communicated policy "supersedes any prior policy." Email from Vaughn Noga to EPA Employees. Maybe Plaintiffs would prefer that this communication came from someone else, or that it acknowledged what Plaintiffs see as Pruitt's past misconduct, but this beef is sliced a bit too thin. The Court does not retain jurisdiction over an entire matter simply because Plaintiffs, if they were to prevail, might request some line edits to an already-issued curative email.

Or maybe — along similar lines — the Court might have required EPA to promulgate a revised policy to correct the informal and deficient policy that existed under Pruitt. But this, too, the Agency has now done. It has implemented a new policy, which Plaintiffs do not contend is deficient under the FRA. And it has sent a mass email informing staff of the revised policy. See Second Ellis Decl., ¶¶ 4–7. EPA already requires its staff to undergo mandatory annual records-management training. Id., ¶ 9. There is no more the Court would do. See LaRoque v. Holder, 679 F.3d 905, 909 (D.C. Cir. 2012) (dismissing as moot case where plaintiffs had already "obtained everything that they could recover from this lawsuit") (internal quotation marks and

citation omitted); Better Gov't Ass'n v. Dep't of State, 780 F.2d 86, 91 (D.C. Cir. 1986) (finding mootness where "we cannot order the appellee departments to do something they have already done").

CREW retorts that the relief it seeks is broader than EPA's voluntary actions. Should they prevail, Plaintiffs ask for an injunction requiring the entire Agency to comply with the FRA. Specifically, they request an order compelling it "to make and preserve as federal records all records containing adequate and proper documentation of the organization, functions, policies, decisions, procedures and essential transactions of the agency." Compl., ¶ 61; accord Pl. Opp. at 5. The reason they are entitled to this relief, CREW says, is that Count I faults EPA's top brass for failing to comply with the requirements of the FRA, rather than challenging the Agency's formal policy. See Pl. Opp. at 4–6. A new official policy, therefore, is not enough.

Just because Plaintiffs ask for the moon does not mean that they are entitled to it. As hinted above, CREW's request runs headlong into this Court's prior Opinion on the permissible scope of this cause of action. Faced with the Agency's contention that the challenged conduct was not judicially reviewable, the Court concluded that D.C. Circuit law permitted plaintiffs to use the Administrative Procedure Act to enforce compliance with the FRA in a narrow circumstance: when plaintiffs challenge an "agency policy — formal or otherwise — that refuses to make" or preserve "records in accordance with the FRA." CREW, 319 F. Supp. 3d at 260. For this reason, the Court affirmed Plaintiffs' ability here to assert their plausible allegation that EPA had a "practice of refusing to create records" at Pruitt's direction. Id. at 259. Lacking from this power, however, is any ability to "demand judicial review of isolated acts allegedly in violation" of the FRA. Id. at 260. The APA does not grant federal courts the authority to engage in pervasive oversight of an agency's compliance with the FRA. See Norton v. S. Utah

11

Wilderness All., 542 U.S. 55, 67 (2004) ("The prospect of pervasive oversight by federal courts over the manner . . . of agency compliance with such congressional directives is not contemplated by the APA.").

But that is precisely what Plaintiffs seek here. They ask the Court to go beyond demanding that the Agency issue a new policy and instead monitor its compliance by "compelling [EPA] to make and preserve" a broad swath of records. See Compl., ¶ 61. A single and isolated act of failing to create such a record could run afoul of such an order. This is not the Court's place. Rather, it is "agency personnel, not the courts" who are tasked with rendering the day-to-day decisions mandated by the FRA. See Armstrong v. Bush, 924 F.2d 282, 293–94 (D.C. Cir. 1991). The remedy the Court could have issued would be one requiring the EPA to do what it has already done. See NRDC, Inc. v. U.S. Nuclear Regulatory Comm'n, 680 F.2d 810, 814 (D.C. Cir. 1982) (finding mootness because court "can hardly order the [Agency] at this point to do something that it has already done").

With that, this count must come to an end. There is no remaining role for this Court to play. Neither a declaration decrying a past Administrator's conduct nor an injunction requiring the Agency to do what is has already done can "affect the parties' rights," nor can they "have a more-than-speculative chance of affecting them in the future." Am. Bar Ass'n, 636 F.3d at 645. This count is moot.

B. Count II

The status of Plaintiffs' second claim flows naturally from the first. In this part of the Complaint, they assert that EPA maintained a deficient records-management program. As the reader is now well aware, the Agency has issued a new policy, which it says moots this allegation.

Before jumping into the parties' arguments, it may be worthwhile to lay a bit of groundwork. The promulgation of a superseding policy or program can have the power to moot a challenge to the old one. See, e.g., Worth v. Jackson, 451 F.3d 854, 861 (D.C. Cir. 2006) (holding that expiration of policy mooted challenge to that policy). The Court has little trouble concluding that if an agency were to totally abandon a challenged practice — absent arguments about voluntary cessation — a plaintiff seeking to enjoin that practice would not retain any "legally cognizable interest" in the suit. See Already, LLC, 568 U.S. at 91. In some instances, however, such as when the revised policy "disadvantage[s]" the plaintiff "in the same fundamental way," there may be serious doubts about whether the promulgation of a new policy has any significant effect on the action. See Am. Freedom Def. Initiative v. WMATA, 901 F.3d 356, 362 (D.C. Cir. 2018). That is not what happened here. Rather, the revised policy corrects the fundamental defect in the old one. In its Opinion discussing EPA's first Motion to Dismiss, the Court concluded that Plaintiffs had alleged a plausible claim because the official Records Management Policy did "not mention any mandate to create records for 'substantive decisions and commitments reached orally,'" as required by the implementing regulations. See CREW, 319 F. Supp. 3d at 261 (quoting 36 C.F.R. § 1222.22(e)). EPA has now cured that defect; indeed, its new policy highlights this requirement. See Second Ellis Decl., ¶ 5.

Plaintiffs do not fight EPA on this point. They instead contend that this change, although a step in the right direction, does not get the Agency across the finish line. Their request is for a compliant records-management program, they say, not just a revised policy. See Pl. Opp. at 7–9; Compl., ¶¶ 63–64. Included in a satisfactory program are "effective controls over the agency's records programs." Compl., ¶ 63. These, they assert in their brief, are still lacking. See Pl. Opp. at 9–10.

The problem is that their Complaint does not back up this contention. Apart from the requirement to document substantive decisions reached orally, Plaintiffs do not point to any specific requirement imposed by the FRA that EPA lacks. They do not, for instance, specify any "effective controls" that the FRA requires not already in place at the Agency. As the Ellis declaration states, EPA requires all employees to go through a training session on its policy, which Plaintiffs no longer allege is lacking in any key respect. See Second Ellis Decl., ¶ 9. Wheeler, the Agency's current head, has already gone through this training. Id., ¶ 10.

CREW's explanation, rather, drifts back into the territory properly occupied by Count I. Plaintiffs fault Pruitt and EPA officials for failing to abide by the program, rather than deficiencies in the program itself, see Pl. Opp. at 8, and continue to take issue with "unlawful directives of top agency officials and an agency practice of affirmatively electing not to create records." Id. at 9. The Court has already addressed these arguments. To the extent Plaintiffs mean to contend that some remnants of Pruitt's misbehavior linger at EPA, the law in this Circuit does not permit a plaintiff to challenge such limited instances of noncompliance with the FRA. See Armstrong, 924 F.2d at 294.

CREW's argument, moreover, seems to be more of a rewriting of their count than an explanation of it. Although, in teeing up Count II, Plaintiffs do mention that the Agency needs "effective controls," this is not what their count primarily gets at. Never do they request that EPA implement any component of a program that it currently lacks to give meaning to this requirement. Nor do they even point to a concrete deficiency in the Agency's program that would render its controls ineffective. The relief they do seek centers on requiring the Agency to have a program "to adequately document agency decisions and activities." Compl., ¶ 66

(emphasis added). The documentation of Agency decisions is precisely the subject of EPA's revision.

The only leg Plaintiffs have left to stand on is the one that got them over the Rule 12(b)(6) hump: EPA's failure to maintain an official policy requiring the documentation of substantive decisions reached orally. Because the Agency has now issued a superseding policy that (all appear to agree) remedies this deficiency — putting aside arguments about voluntary cessation addressed below — EPA has carried its burden of demonstrating that its action moots Count II.

Finally, Plaintiffs make no headway in arguing that the "interim" nature of the policy alone renders it inadequate. The Court has rejected such a contention before, and it does so again now. See CREW v. U.S. SEC, 858 F. Supp. 2d 51, 62 (D.D.C. 2012).

C. Voluntary Cessation

In a final effort, Plaintiffs invoke the voluntary-cessation doctrine. This precept states that, unless certain conditions are met, a defendant's voluntary choice to forgo the challenged conduct does not deprive the court of jurisdiction. See United States v. W.T. Grant Co., 345 U.S. 629, 632–33 (1953). The rationale for this doctrine is intuitive. If a defendant cedes to a lawsuit's demands of its own free will, rather than compelled by a court's order, there exists a possibility that it may "return to [its] old ways." Id. at 632. A defendant's voluntary decision to cease the activities that gave rise to the suit extinguishes the live controversy, therefore, "only if (i) there is no reasonable expectation that the alleged violation will recur, and (ii) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." Aref, 833 F.3d at 251 (internal quotations and alterations omitted). The party asserting mootness bears the burden here, and it is a "heavy" one. Id. To prevail, EPA must make it "absolutely clear

15

that the allegedly wrongful behavior could not reasonably be expected to recur." Id. (quoting Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 189 (2000)).  The Court will go through each prong in turn.

Before doing so, however, a brief note on the scope of this inquiry may help to narrow the issues at play.  EPA's promulgation of the revised records policy is a proper target of voluntary-cessation arguments.  Pruitt's departure from the EPA, on the other hand, is not.  The "voluntary-cessation exception to the mootness doctrine . . . 'does not apply when the voluntary cessation of the challenged activity occurs because of reasons unrelated to the litigation.'" Leonard, 598 F. App'x at 9 (quoting ACLU of Mass. v. U.S. Conference of Catholic Bishops, 705 F.3d 44, 55 (1st Cir. 2013)).  There is no hint here that Pruitt left the Agency as a result of this litigation, as opposed to his myriad other woes, even if an argument can be made that there is overlap between the events.  Because his departure is sufficient to moot Count I, the voluntary-cessation argument only relates to Count II.

   1. *No Reasonable Expectation of Recurrence*

This Court and other Circuits have previously and "consistently recognized that where the defendant is a government actor — and not a private litigant — there is less concern about the recurrence of objectionable behavior." CREW, 858 F. Supp. 2d at 61–62 (collecting cases); see also Coral Springs St. Sys, Inc. v. City of Sunrise, 371 F.3d 1320, 1328–29 (11th Cir. 2004) ("[G]overnmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.").  Here, EPA has taken the affirmative step of revising its records-management policy, and the principal transgressor of proper recordkeeping practices is no longer at the Agency.  For EPA to resume its challenged conduct, therefore, it would have to decide to promulgate a new policy inconsistent

16

with the FRA.  In the Ellis declaration, the Agency affirms that it "intends to maintain" the portion of the policy that was revised to address the Complaint's prior challenge.  See Second Ellis Decl., ¶ 5.  This is sufficient to carry Defendant's burden.  See CREW, 858 F. Supp. 2d at 61; see also Worth, 451 F.3d at 861 (crediting "unchallenged agency affidavit" that government "will not renew" challenged activity to conclude that action was moot under voluntary-cessation doctrine).

### 2. *Effects of Violation Eradicated by Intervening Events*

Similarly, no effects of the alleged violations linger.  In the cases in which the effects of an injury were not eradicated, and thus kept the controversy alive, "some tangible, concrete effect, traceable to the injury, and curable by the relief demanded, clearly remained."  Penthouse Int'l, Ltd. v. Meese, 939 F.2d 1011, 1019 (D.C. Cir. 1991).  Here, where the harm alleged is a deficient policy and the only relief sought is prospective, it is hard to seek how any effect could possibly linger after the Agency corrects the policy.

Plaintiffs do not meaningfully argue otherwise.  Instead, they rehearse arguments the Court already addressed above.  Their primary contention is that the scope of their Complaint is broader than the EPA's curative action.  See Pl. Opp. at 15.  The Court rejects this contention for the same reasons it found it lacking above.  In a challenge like this one, there is simply no lingering effect of a past violation when the only relief sought is prospective.  See Penthouse Int'l, 939 F.2d at 1019.

\* \* \*

The effect of this decision should not be overstated.  Should CREW and PEER discern a current policy or practice at EPA of noncompliance with the FRA — rather than one explicitly

17

superseded or intrinsically tied to a past Administrator — nothing in this decision bars them from bringing suit again. It is only the current Complaint that cannot proceed.

## IV. Conclusion

For these reasons, the Court will grant Defendants' Motion to Dismiss. A separate Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: January 10, 2019